In the Matter of George D.
GLIDDEN, Debtor.

STATE OF CONNECTICUT, Plaintiff,

v.

George D. GLIDDEN, Debtor, Defendant.

Bankruptcy No. 2–79–00842.
Adv. No. 2–80–0003.

United States Bankruptcy Court,
D. Connecticut.

Jan. 5, 1981.

Paul J. Bakulski, Asst. Atty. Gen., Hartford, Conn., for plaintiff, State of Connecticut.

Christopher Noble, Hartford, Conn., for debtor-defendant.

## MEMORANDUM AND ORDER

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### BACKGROUND

In this adversary proceeding commenced by the State of Connecticut the sole issue is the constitutionality of 11 U.S.C. § 523(a)(5)(A) which provides that a discharge will not discharge an individual debtor from any debt to a spouse or a child of the debtor for any alimony, maintenance, or support unless "(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise." 11 U.S.C. § 101(14) defines "entity" as including a "governmental unit", and § 101(21) defines "governmental unit" to mean, *inter alia*, a "State". The principal contention of Connecticut is that § 523(a)(5)(A), in discharging child support obligations assigned to the state, impermissibly interferes with Connecticut's traditional state government function of collecting such obligations, thereby violat-

ing the Tenth Amendment to the United States Constitution.[1]

A joint stipulation has been filed setting forth the following facts. George D. Glidden (debtor), who filed a Chapter 7 petition on October 26, 1979, is indebted to Connecticut in the amount of $2,890.06. This debt accrued under an order for child support payments in the amount of $15.00 per week per child entered in connection with a divorce decree on October 3, 1973. On that date, the debtor's former spouse and two children were recipients of public assistance. As a condition of continued eligibility for such public assistance, the debtor's former spouse assigned the rights of support to Connecticut pursuant to Conn.Gen. Stat. 17–82b and the Social Security Act. Conn.Gen.Stat. 17–82b, which requires such assignment of support rights, was enacted in response to Title IV of the Social Security Act, 42 U.S.C. § 602, in order to qualify Connecticut for federal funds for its Aid to Families With Dependent Children Program (AFDC). The debtor's obligation to Connecticut represents the net accumulated arrearage of the amount ordered by the state court divorce decree, but not the actual AFDC benefits to the debtor's dependents, which benefits exceed the obligation to Connecticut. In fiscal year 1979, Connecticut disbursed through AFDC over 170 million dollars, of which the United States contributed one-half. In the same year, Connecticut collected support accruals of 11 million dollars, of which 65% is retained by Connecticut, and 35% is credited to the United States as a reduction in the federal allocation to Connecticut for AFDC payments. At the end of 1979, the balance of unpaid support payments due Connecticut was $47,158,000.00.

While Connecticut's principal constitutional attack is based upon the Tenth Amendment, it asserts that § 523(a)(5)(A) is violative of the Eleventh Amendment as well.[2] The debtor claims that the legislative enactment rendering his debt dischargeable is constitutional and relies upon the bankruptcy clause of the federal constitution.[3] In addition, the debtor alludes to the supremacy clause of the constitution,[4] as invoked in *M'Culloch v. Maryland*, 4 Wheat. 316, 4 L.Ed. 579 (1819). The debtor says that Connecticut's claim to the protection of the Eleventh Amendment was rejected in *Matter of Crisp*, 521 F.2d 172 (2nd Cir. 1975).

## DISCUSSION

Connecticut's Tenth Amendment attack upon § 523(a)(5)(A) rests solely upon the decision of the United States Supreme Court in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). In that case, the Court held that a 1974 congressional amendment to the Fair Labor Standards Act which had the effect of extending the minimum wage and maximum hour provisions of the Act to employees of states and their political subdivisions was not a valid exercise of the authority granted to Congress under the commerce clause, Art. I, § 8, cl. 3, inasmuch as the 1974 amendment, by requiring disbursement of state funds, had the effect of displacing "state policies regarding the manner in which [the states] will structure delivery of those governmental services which their citizens require." *Id.* at 847, 96 S.Ct. at 2472. *Usery* determined that such an act of Congress so interfered with "the States' freedom to structure integral operations in

---

1. Amendment X—The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

2. Amendment XI—The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . .

3. Article I, § 8, cl. 4 provides that Congress shall have the power "To establish . . . uniform laws on the subject of Bankruptcies throughout the United States."

4. Article VI, cl. 2. This Constitution, and the Laws of the United States which shall be made in pursuance thereof; . . . shall be the supreme law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the Contrary notwithstanding.

areas of traditional governmental functions" as to be beyond the power delegated to Congress in the commerce clause, *Id.* at 852, 96 S.Ct. at 2474, and thus violated the Tenth Amendment reservation of powers to the states. Connecticut argues that enforcement of child-support obligations is a traditional governmental function in Connecticut, rooted in policy considerations dating in one form or another to colonial days. It claims that the bankruptcy clause, like the commerce clause, is subject to Tenth Amendment scrutiny,[5] that § 523(a)(5)(A), by rendering child-support obligations assigned to the state dischargeable, impermissibly interferes with the state's ability to collect and enforce such obligations, and that federal interest in promulgating § 523(a)(5)(A) is not demonstrably greater than the contrary interest of the state when a balance of interest test is applied.

■ I do not believe that the constitutional analysis of *Usery* resolves the instant dischargeability issue. I conclude that the case at bar is clearly distinguishable from *Usery*, and that Congress was acting within its constitutionally delegated powers when it promulgated § 523(a)(5)(A) of the Bankruptcy Reform Act.

*Usery* limits, by application of the Tenth Amendment, the power of Congress pursuant to the commerce clause to entrench upon the right of the State to determine its own budgetary disbursements. Inarguably, the commerce power is a general one which has been employed to serve the most far-reaching ends. By contrast, the bankruptcy power is a specific one, focused upon a restricted and identifiable area of societal concern. The invalid statute in *Usery* called for states to disburse funds. The Court recognized that in so doing Congress had exercised power "in a fashion that impairs the States' integrity or their ability to function effectively in a federal system". *Id.*, 426 U.S. at 843, 96 S.Ct. at 2470. No such conclusion is justified with respect to the instant contested statute. Discharge provisions promulgated by Congress under

the bankruptcy power make no demand upon the states to spend money, and it can scarcely be said that the joint stipulation of the parties demonstrates that Connecticut's integrity or its ability to function effectively has been or will be impaired by the discharge of support obligations assigned to it.

Connecticut argues that *Usery* is a reaffirmation of *Ashton v. Cameron County Dist., supra.* In *Ashton*, the Supreme Court held that the bankruptcy clause did not confer power on the federal government to limit the states in the control of their fiscal affairs, and the Court struck down an amendment to the Bankruptcy Act which allowed municipal corporations to resort to federal courts of bankruptcy to effect readjustment of obligations. *Ashton* has been referred to as a case which no longer represents authoritative law. "*Ashton v. Cameron County District . . . in effect . . . [has] been overruled by United States v. Bekins*"; *Prudential Insurance Co. v. Benjamin*, 328 U.S. 408, 433, at n. 4, 66 S.Ct. 1142, 1155 n.4, 90 L.Ed. 1342 (1945). The other Supreme Court holding referred to by Connecticut, *United States v. Bekins, supra*, is the very case cited by the Court in *Prudential Insurance Co., supra* as having overruled *Ashton*. In *Bekins*, the then newly-enacted Chapter X of the Bankruptcy Act was held to be within the scope of the bankruptcy powers of Congress and not an infringement on the sovereignty of any state. *Id.*, 304 U.S. at 51, 58 S.Ct. at 815. Chapter X authorized voluntary petitions by municipal corporations in the bankruptcy court to affect a composition of their debts. *Usery* cites neither *Ashton* nor *Bekins*. Neither case addresses any issue involving the discharge provisions of bankruptcy law as applied to individuals—the central issue of the case at bar.

■ Ever since *Hanover National Bank v. Moyses*, 181 U.S. 187, 22 S.Ct. 857, 46 L.Ed. 1113 (1902), it has been settled law that while Congress cannot pass legislation which is "grossly unreasonable" as applied

---

**5.** Citing *Ashton v. Cameron County Dist.*, 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309 (1936) and

*United States v. Bekins*, 304 U.S. 27, 58 S.Ct. 811, 82 L.Ed. 1137 (1938).

to its powers under the bankruptcy clause, otherwise "Congress may prescribe any regulations concerning discharge in bankruptcy". *Id.* at 192, 22 S.Ct. at 862, *Cf. Kalb v. Fuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940). The Supreme Court case most directly in point, and one which this court feels is controlling, is *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). In *Perez*, the plaintiffs owed debts on a judgment for personal injury and property damage arising out of an automobile accident. At the time, a statute of the State of Arizona required that car owners involved in accidents prove their ability to pay any judgment or suffer suspension of their driver's licenses. Licenses suspended under the statute were not to be reinstated until any outstanding judgment was paid. The statute specifically provided that discharge in bankruptcy did not relieve debtors from paying such a judgment. The plaintiffs, having filed petitions and received discharges in bankruptcy, sought declaratory and injunctive relief to have their licenses reinstated, claiming that the Arizona statute was in direct conflict with the Bankruptcy Act and thus violative of the supremacy clause. The Supreme Court held that despite an acknowledged purpose of the Arizona statute to protect "the public using the highways from financial hardship which may result from the use of automobiles by financially irresponsible persons" (*Id.* at 644, 91 S.Ct. at 1708), the purpose of Congress in establishing the discharge provisions of the Bankruptcy Act was such that a conflict existed between the two statutes, and that under the supremacy clause, the Arizona statute had to give way. The position of Connecticut in the instant proceeding is analogous to that of Arizona in *Perez* to the extent that Connecticut asserts that federal dischargeability provisions must give way to its right to require payments from discharged debtors. The logic of *Perez* upholds the supremacy of the federal discharge provisions over the claimed right of Connecticut to collect support obligations from discharged debtors. Assuming, *arguendo*, that Connecticut has established that enforcing the payment of

support obligations is a traditional state governmental function, the statistics submitted to the court by way of stipulation, to show how much Connecticut is owed in arrearages upon debts attributable to assignments of support obligations, do not demonstrate how much Connecticut will lose by reason of discharges in bankruptcy. Any conclusions drawn upon the basis of the stipulated figures would be unreasonably speculative. Thus, even if this court were to hold that the principles of *Usery* governed the disposition of this proceeding, no adequate information has been presented as to what impact discharge has upon the ability of Connecticut to structure integral operations in what it asserts is an area of traditional governmental functions.

Contrary to Connecticut's assertion that the federal government's interest in enacting § 523(a)(5)(A) is not demonstrably greater than Connecticut's interest in enforcing payment of support obligations, it appears that discharge provisions have had an increasing role in the history of bankruptcy law. Our earliest laws maximized the equal distribution of assets among the creditors of insolvent businessmen and traders, and omitted provisions for the discharge of debtors. But as the law evolved in succeeding bankruptcy acts, a primary purpose came to be, in the words of the often-cited holding in *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934), to give "to the honest but unfortunate debtor ... a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt". Congress acted with due consideration of this purpose when it enacted § 523(a)(5)(A), and repealed § 456(b) of the Social Security Act (42 U.S.C. § 656(b)) which had formerly made support obligation assigned to a state nondischargeable.

■ Connecticut's attack upon the constitutionality of § 523(a)(5)(A) on Eleventh Amendment grounds has been fully answered in *Matter of Crisp, supra*:

The Commissioner also argues that the eleventh amendment bars discharge of

Crisp's debt without the consent of Connecticut. But the eleventh amendment does not apply here at all. It protects a state from federal court money judgments necessarily paid out of the state treasury. The action must be 'in essence one for the recovery of money from the state.' In this case, Crisp is not seeking any payment from the State treasury. A judgment of dischargeability in the bankruptcy proceeding does not now deplete Connecticut's coffers by a penny .... Secondly, Article I, section 8, clause 4 of the Constitution specifically grants Congress the power to enact bankruptcy laws, which it has exercised in Title 11 of the United States Code. It is now established that Congress, by enacting the Bankruptcy Act of 1898 and by continuing in effect what is now section 17a(1), 11 U.S.C. 635(a)(1), intended to make debts owed to the state and federal governments dischargeable.... Any exception for a particular kind of state debt should come from Congress, not from us. *Id.* at 178 (citations omitted).

In the proceeding at bar, the debtor has brought no suit to collect money from the State of Connecticut. To the contrary, the state is the plaintiff herein, seeking to have a debt owed to it by the debtor declared nondischargeable.[6]

■ Finally, the court recognizes that even if the constitutional issues raised herein more heavily favored Connecticut than I find them to do,

A trial court should be slow to deny constitutionality to an Act of Congress unless its conflict with the constitutional provision is clear. Such duty belongs peculiarly to the appellate courts. *Thompson v. United States*, 148 F.Supp. 910, 914 (E.D.Pa.1957).

For all of the foregoing reasons, the court holds that § 523(a)(5)(A) of the Bankruptcy Code of 1978 was enacted pursuant to the power delegated to Congress under Art. I,

§ 8, cl. 4 of the United States Constitution, and enactment of said section was not barred by either the Tenth or the Eleventh Amendments. This being so, the claim of the State of Connecticut for judgment of nondischargeability of the debtor's debt owed on account of assignment of his support obligations is denied, and said debt is discharged, and it is

SO ORDERED.

---

**6.** See also 11 U.S.C. § 106(c) which provides that "notwithstanding any assertion of sovereign immunity (1) a provision of this title that contains ... 'entity' ... applies to governmental units; and (2) a determination by the court of an issue arising under such provision binds governmental units".