In re NASHVILLE WHITE TRUCKS, INC., a/k/a Mobile Truck and Trailer Service, Inc., Debtor.

Martha B. OLSEN, Commissioner of Revenue For the State of Tennessee, Plaintiff,

v.

Irwin A. DEUTSCHER, Trustee, Defendant.

Bankruptcy No. 380–00080.
Adv. No. 380–0590.

United States Bankruptcy Court, M. D. Tennessee.

July 28, 1982.

Linda M. Cole, Nashville, Tenn., for intervenor, United States.

Martha B. Olsen, Com'r of Revenue for the State of Tenn., Trustee.

J. Hugh McKinnon, Nashville, Tenn., for plaintiff, Com'r of Revenue for the State of Tenn.

William C. Argabrite, Nashville, Tenn., for defendant, Irwin A. Deutscher, Trustee.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on the complaint of Martha B. Olsen, Commissioner of Revenue for the State of Tennessee (hereinafter "Commissioner"), seeking a declaratory judgment pursuant to 28 U.S.C.

§ 2201 that the automatic stay of 11 U.S.C. § 362 is unconstitutional as applied to the State of Tennessee or, if the automatic stay is constitutional, that the provisions of 11 U.S.C. § 362 do not prohibit the State of Tennessee from assessing and collecting delinquent or deficient sales taxes incurred by the debtor Nashville White Trucks, Inc. (hereinafter "Nashville White Trucks"), while operating under the provisions of Chapter 11 of the 1978 Bankruptcy Reform Act. Upon consideration of the evidence presented in this adversary proceeding, stipulations, briefs of the parties and the entire record, this court concludes that the automatic stay imposed by 11 U.S.C. § 362 is constitutional and that the stay precludes the State of Tennessee from taking any action to collect or assess the unpaid sales taxes in question from property of the estate.

The following shall constitute findings of fact and conclusions of law pursuant to Rule 752 of the Federal Rules of Bankruptcy Procedure.

The parties have stipulated to the following facts. On January 10, 1980, Nashville White Trucks filed a voluntary Chapter 11 petition in this court. Nashville White Trucks continued to operate its business as a debtor-in-possession under Chapter 11 of the Bankruptcy Code from January 10, 1980, until July 2, 1980. During this time, the debtor-in-possession accrued approximately $13,817.57 in unpaid sales and use taxes, penalties and interest.[1] The records maintained by the debtor-in-possession indicate that Nashville White Trucks charged sales taxes on all taxable transactions incurred while operating under Chapter 11. These tax funds were not placed in a separate segregated account but instead were deposited in the general operating account of the debtor-in-possession.

On July 2, 1980, this court appointed Irwin A. Deutscher as trustee for the estate of Nashville White Trucks. Since his appointment, the trustee has submitted monthly sales and use tax returns to the Tennessee Department of Revenue summarizing the continued operations of Nashville White Trucks and has paid to the Tennessee Department of Revenue all sales and use taxes which have accrued during

---

1. Chapter 30 of the Tennessee Code governs the assessment and collection of sales and use taxes by the Tennessee Department of Revenue. The specific statutes relevant to the present case are, in pertinent part, as follows:

"*67-3018. Payment by dealer.*—Every 'dealer' making sales, whether within or outside the state, of tangible personal property, for distribution, storage, use, or other consumption in this state, or furnishing any of the things or services taxable under this chapter, shall be liable for the tax imposed by this chapter.

*67 3020. Collection and payment by retailers.*—(a) The commissioner may by regulation provide that the amount collected by the retailer from the consumer in reimbursement of the tax be displayed separately from the list price, the price advertised in the premises, the marked price, or other price on the sale check or other proof of sale.

. . . . .

(d) The tax hereby imposed shall be collected by the retailer from the consumer insofar as it can be done.

*67- 3022. Monthly returns and payment.* —The taxes levied hereunder shall be due and payable monthly, on the first day of each month, and for the purpose of ascertaining the amount of tax payable under this chapter it shall be the duty of all dealers on or before the 20th day of each month to transmit to the commissioner, upon forms prescribed, prepared and furnished by him, returns, showing the gross sales, or purchases, as the case may be, arising from all sales or purchases taxable under this chapter during the preceeding calendar month.

*67–3023. Payment of tax with return.*—At the time of transmitting the return required hereunder to the commissioner the dealer shall remit to him therewith the amount of tax due under the applicable provisions of this chapter and failure to so remit such tax shall cause said tax to become delinquent." Tenn.Code Ann. §§ 67–3018, 67–3020(a)(d), 67–3022, 67–3023 (1976).

28 U.S.C.S. § 960 (Law.Co-op.1977) requires that a debtor-in-possession operating a business under the authority of Chapter 11 of the Bankruptcy Code shall pay the tax imposed by Chapter 30 of the Tennessee Code. Section 960 states:

"Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation."

the trustee's administration of the estate. The trustee has, however, refused to remit the sales and use taxes accumulated by the debtor-in-possession prior to July 2, 1980. The trustee's action prompted Tennessee's Commissioner of Revenue to institute this adversary proceeding. As of the present date, no plan of reorganization has been filed in this case.

The Commissioner initially attacks the constitutionality of the automatic stay imposed by 11 U.S.C. § 362 as applied to the Tennessee Department of Revenue. The automatic stay prohibits any entity, including a governmental unit, from pursuing any action to obtain possession of property of the estate during the pendency of a Chapter 11 reorganization proceeding [2], subject to certain restrictions which are not relevant herein. See In re Eisenberg, 7 B.R. 683, Bankr.L.Rep. (CCH) ¶ 68,514, at 80,241–80,-242 (Bkrtcy.E.D.N.Y.1980). The Commissioner specifically alleges that the automatic stay provisions violate both the tenth and eleventh amendments to the United States Constitution.

The Commissioner relies on the United States Supreme Court decision in National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) and its progeny in challenging the constitutionality of the automatic stay under the tenth amendment.[3] In National League of Cities, the Supreme Court held that Congress had exceeded its congressional power under the commerce clause of the United States Constitution [4] by extending the statutory minimum wage and maximum hours provisions of the Fair Labor Standards Act to state and local governments. The Supreme Court found that Congress' attempt to impose minimum wage and maximum hour requirements on the States "operate[d] to directly displace the States' freedom to structure integral operations in areas of traditional governmental functions." National League of Cities v. Usery, 426 U.S. at 852, 96 S.Ct. at 2474. The Commissioner contends that this same analysis should apply with equal force to the exercise of Congressional power under the bankruptcy clause of the United States Constitution.

However, the Supreme Court in National League of Cities held that the tenth amendment restricted Congress' power to act under the commerce clause, not the bankruptcy clause. The Court specifically declined to address the issue of whether Congress could affect integral operations of state government by exercising authority granted it under other sections of the Constitution. National League of Cities v. Usery, 426 U.S. at 852 n. 17, 96 S.Ct. at 2474 n. 17. As the Supreme Court recently recognized, "there are situations in which the nature of the federal interest advanced may be such

---

**2.** 11 U.S.C.S. § 362 (Law.Co-op.1979) provides in relevant part:

"(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

. . . . .

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

. . . . .

(c) Except as provided in subsections (d), (e), and (f) of this section—

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; and

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, or 13 of this title, the time a discharge is granted or denied."

11 U.S.C.S. § 101(14) (Law.Co-op.1977) defines "entity" as including a governmental unit.

**3.** The tenth amendment provides:

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

U.S.Const.Amend. X.

**4.** The commerce clause grants Congress the power "to regulate commerce with foreign nations, and among the several States." U.S. Const. art. I, § 8, cl. 3.

that it justifies State submission." *Hodel v. Virginia Surface Mining and Reclamation Association,* 452 U.S. 264, 288 n. 29, 101 S.Ct. 2352, 2366 n. 29, 69 L.Ed.2d 1, 23 n. 29 (1981).[5]

The exercise of the Congressional bankruptcy power in the instant case represents such an overriding federal interest. In upholding the constitutionality of the discharge provisions of 11 U.S.C. § 523(a)(5)(A) against a tenth amendment challenge, the Second Circuit Court of Appeals expressed grave doubts as to whether the tenth amendment limitations set forth in *National League of Cities* applied to the federal bankruptcy power. *Connecticut v. Glidden,* 8 B.R. 128 (Bkrtcy.D.Conn.), *aff'd* 653 F.2d 85, 87–88 (2d Cir. 1981), *cert. denied* —— U.S. ——, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982). This same conclusion was also reached by Bankruptcy Judge Emil Goldhaber in rejecting the State of Pennsylvania's tenth amendment attack on the lien avoidance provisions of 11 U.S.C. § 522(f)(1). *In re Galbraith,* 15 B.R. 549, 555–556 (Bkrtcy.E.D.Pa.1981).

■ This court concurs with the analyses set forth in the aforementioned opinions. The bankruptcy clause of the United States Constitution delegates to Congress the broad power "[T]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." U.S.Const. art. I, § 8, cl. 4. The Supreme Court has consistently proclaimed that the federal bankruptcy power is unrestricted and paramount, *Marine Harbor Properties, Inc. v. Manufacturer's Trust Co.,* 317 U.S. 78, 83, 63 S.Ct. 93, 96, 87 L.Ed. 64 (1942); *International Shoe Co. v. Pinkus,* 278 U.S. 261, 265, 49 S.Ct. 108, 110, 73 L.Ed. 318 (1929), and that Congress "may embrace within its legislation whatever may be deemed important to a complete and effective bankrupt system." *United States v. Fox,* 95 U.S. 670, 672, 24 L.Ed. 538 (1878). As one leading commentator remarked in differentiating between the commerce clause and the bankruptcy clause:

"It, therefore, becomes important to note that the grant of the bankruptcy power in its final form, although related to commerce, was not included in clause 3, which gives to Congress the power 'to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes.' From that it is fair to infer that the draftsmen did not wish to restrict the bankruptcy grant as they had done the power over commerce. Con-

5. The scope of *National League of Cities v. Usery* has not yet been extended to limit Congress' powers under any other section of the Constitution. *See e.g., City of Rome v. United States,* 446 U.S. 156, 159, 178–180, 100 S.Ct. 1548, 1553, 1562–1564, 64 L.Ed.2d 119 (1980) (holding that the tenth amendment places no restrictions on the Congressional power "to enforce the Civil War Amendments 'by appropriate legislation.'"); *Massachusetts v. United States,* 435 U.S. 444, 455–456 & n. 13, 98 S.Ct. 1153, 1160–1161 & n. 13, 55 L.Ed.2d 403 (1978) (finding that Congress may constitutionally impose under its taxing power a non-discriminatory fee upon a state for the "use of any taxable civil aircraft during any year"); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 453–456, 96 S.Ct. 2666, 2670–2671, 49 L.Ed.2d 614 (1976) (upholding Congressional power under § 5 of the fourteenth amendment to authorize private damages actions against state governments for discrimination in employment); *United States v. District of Columbia,* 654 F.2d 802, 806–808 (D.C.Cir.1981), *cert. denied* 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1982) (rejecting tenth amendment challenge to Congressional power exercised under the 1972 amendments to the Federal Water Pollution Control Act); *Cantwell v. County of San Mateo,* 631 F.2d 631, 636–637 (9th Cir. 1980); *cert. denied,* 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981) (rejecting tenth amendment challenge to federal statute governing retirement pay for reserve military personnel since the federal statute was enacted under the Congressional war power); *New Hampshire Department of Employment Security v. Marshall,* 616 F.2d 240, 245–249 (1st Cir.), *appeal dismissed,* 449 U.S. 806, 101 S.Ct. 53, 66 L.Ed.2d 10 (1980) (upholding amendments to Federal Unemployment Tax Act extending benefits to state employees on grounds that the statute was enacted under the Congressional spending power and not the commerce power) *Marshall v. Owensboro-Daviess County Hospital,* 581 F.2d 116, 119–120 (6th Cir. 1978) (finding that Equal Pay Act enacted by Congress pursuant to § 5 of the fourteenth amendment did not violate provisions of tenth amendment). *See also Bleakley v. Jekyll Island—State Park Authority,* 536 F.Supp. 236, 238 (S.D.Ga.1982).

gress was to have an all-inclusive power, through the bankruptcy grant, to enact any legislation *reasonably framed and related to* the subject of bankruptcies, which in turn is indissolubly linked to commerce and credit."

1 Collier on Bankruptcy ¶ 0.02, at 5 (14th ed. 1974).

■ Furthermore, the Supreme Court has recognized as a well-settled principle that a state's power to assess and collect state taxes must submit to the federal rules and regulations controlling the administration of the bankruptcy estate. *See, e.g., Gardner v. New Jersey,* 329 U.S. 565, 575–579, 67 S.Ct. 467, 472–474, 91 L.Ed. 504 (1947); *New York v. Irving Trust Co.,* 288 U.S. 329, 331–333, 53 S.Ct. 389, 390–391, 77 L.Ed. 815 (1933); *Van Huffel v. Harkelrode,* 284 U.S. 225, 228–229, 52 S.Ct. 115, 116, 117, 76 L.Ed. 256 (1931). *See also Springfield v. Hotel Charles Co.,* 84 F.2d 589, 591 (1st Cir. 1936). As the Supreme Court explained in *New York v. Irving Trust Co.,* 288 U.S. at 333, 53 S.Ct. at 391:

"If a state desires to participate in the assets of a bankrupt, she must submit to appropriate requirements by the controlling power; otherwise, orderly and expeditious proceedings would be impossible and a fundamental purpose of the Bankruptcy Act would be frustrated."

In *Gardner v. New Jersey,* 329 U.S. at 577, 67 S.Ct. at 473, the Court again emphasized the necessity of requiring a state to pursue its tax lien within the framework of the federal bankruptcy proceeding:

"If the reorganization court lacked the power to deal with tax liens of a State, the assertion by a State of a lien would pull out chunks of an estate from the reorganization court and transfer a part of the struggle over the corpus into tax bureaus and other state tribunals. That would not only seriously impair the power of the court to administer the estate [but would also] . . . adversely affect the power of . . . the court to promulgate a reorganization plan."

■ Finally, the Supreme Court has held that Congress may, pursuant to the federal bankruptcy power, enact an automatic stay which protects debtors and their property from judicial actions pursued outside the realm of the bankruptcy proceeding. In upholding the validity of § 75 of the former Bankruptcy Act [11 U.S.C. § 203 (repealed 1978) ] which provided for an automatic stay of all foreclosure proceedings in state courts upon the filing of a bankruptcy petition by a farmer, the Court in *Kalb v. Feuerstein,* 308 U.S. 433, 438–439, 60 S.Ct. 343, 346, 84 L.Ed. 370 (1940), justified Congress' implementation of an automatic stay of state court proceedings as follows:

"It is generally true that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack. But Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally . . . *The States cannot, in the exercise of control over local laws and practice, vest State courts with power to violate the supreme law of the land. The Constitution grants Congress exclusive power to regulate bankruptcy and under this power Congress can limit the jurisdiction which courts, State or Federal, can exercise over the person and property of a debtor who duly invokes the bankruptcy law.* If Congress has vested in the bankruptcy courts exclusive jurisdiction over farmer-debtors and their property, and has by its Act withdrawn from all other courts all power under any circumstances to maintain and enforce foreclosure proceedings against them, its Act is the supreme law of the land which all courts—State and Federal—must observe. The wisdom and desirability of an automatic statutory ouster of jurisdiction of all except bankruptcy courts over farmer-debtors and their property were considerations for Congress alone." (footnotes omitted) (emphasis added).

■ For these reasons, this court is of the opinion that the Supreme Court's decision in *National League of Cities* is inapplicable to the exercise of Congressional power under the bankruptcy clause. However, even if the rationale of *National League of Cities* does limit Congress' power under the bankruptcy clause, this court concludes that Congress' enactment of 11 U.S.C. § 362 does not violate the principles of federalism as expounded on in *National League of Cities*. The plurality opinion in *National League of Cities* found that the tenth amendment precluded Congress from enacting legislation under the commerce clause which would "directly displace the States' freedom to structure integral operations in areas of traditional governmental functions." *National League of Cities v. Usery*, 426 U.S. at 852, 96 S.Ct. at 2474. Justice Blackmun, in concurring with the plurality opinion, stated that the opinion "adopts a balancing approach, and does not outlaw federal power in areas such as environmental protection, where the federal interest is demonstrably greater and where state facility compliance with imposed federal standards would be essential." *National League of Cities v. Usery*, 426 U.S. at 856, 96 S.Ct. at 2476. The balancing approach articulated by Justice Blackmun was reaffirmed by the Supreme Court in *Hodel v. Virginia Surface Mining and Reclamation Association*, 452 U.S. at 284 n. 29, 101 S.Ct. at 2364 n. 29, 69 L.Ed.2d at 23 n. 29.

■ The balancing of state and federal interests in this case dictates that the federal interest must predominate. The automatic stay imposed by 11 U.S.C. § 362 merely delays the enforcement of the Commissioner's action to collect past due sales taxes from property of the estate and therefore does not directly impair the State of Tennessee's ability to collect sales and use taxes. As the Supreme Court observed in *New Jersey v. Anderson*, 203 U.S. 483, 494, 27 S.Ct. 137, 141, 51 L.Ed. 284 (1906):

> "The bankrupt act requires the payment of all taxes legally due and owing. We think the tax thus assessed upon that basis was legally due and owing, *although not collectible until after the adjudication.*" (emphasis added).

■ The Supreme Court's pronouncement in *New Jersey v. Anderson* remains an effective statement of the law under the Bankruptcy Code. Furthermore, the Bankruptcy Code provides the Commissioner with various remedies whereby she might seek to obtain a speedier settlement of past due tax obligations owed by the estate. For instance, the Commissioner could file a request for the payment of these unpaid taxes as an administrative expense of the estate pursuant to 11 U.S.C. § 503(a) and (b)(1)(B), (C).[6] If the claim were allowed, then the unpaid taxes would be an administrative expense of the case.[7] The Commis-

---

6. 11 U.S.C.S. § 503 (Law.Co-op.1979) provides in pertinent part:

"(a) An entity may file a request for payment of an administrative expense.

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A)...

(B) any tax—

(i) incurred by the estate...

.        .        .        .        .

(C) Any fine, penalty, or reduction in credit, relating to a tax of a kind specified in subparagraph (B) of this paragraph."

7. The court would note that the trustee, as the successor in interest to the debtor-in-possession, is "bound by all authorized acts of the debtor-in-possession" and is himself "under a duty to seek out and pay taxes accruing against

the bankrupt estate during the bankruptcy itself." *Nicholas v. United States*, 384 U.S. 678, 693 n. 27, 86 S.Ct. 1674, 1684 n. 27, 16 L.Ed.2d 853 (1966). The responsibility of the trustee to pay all taxes accruing during the administration of the estate effectively precludes a trustee "from operating tax free business in competition with tax burdened operators." *In re New York, New Haven and Hartford Railroad Co.*, 360 F.Supp. 1155, 1158 (D.Conn.1973), *quoted in Babb v. State ex rel. Oklahoma Tax Commission (In re Rhea)*, 17 B.R. 789, 790 (Bkrtcy.W. D.Okl.1982). *Accord Palmer v. Webster & Atlas National Bank*, 312 U.S. 156, 163, 61 S.Ct. 542, 545, 85 L.Ed. 642 (1941). The trustee in this case has apparently refused to pay the sales taxes accumulated by the debtor-in-possession on the basis that he is unable to determine whether enough funds will be available at the close of the case to pay both the past due sales taxes and other administrative expenses,

sioner may also request the court to determine the tax liability of the estate pursuant to 11 U.S.C. § 505(c).[8] In addition, the Commissioner has the option to petition the court for relief from the automatic stay pursuant to 11 U.S.C. § 362(d).[9] Finally, the Commissioner could request the court to dismiss the Chapter 11 case or to convert the Chapter 11 reorganization to a case under Chapter 7 pursuant to 11 U.S.C. § 1112.[10]

■ The Commissioner's interest in prompt payment of state sales and use taxes does not outweigh the vital federal interest in insuring the orderly and efficient administration of the bankruptcy estate through the utilization of the automatic stay. In *Holtkamp v. Littlefield*, 669 F.2d 505, 508 (7th Cir. 1982), the Seventh Circuit Court of Appeals aptly described the necessity for an automatic stay:

"The purpose of the automatic stay is to preserve what remains of the debtor's insolvent estate and to provide a system-

atic equitable liquidation procedure for all creditors, secured as well as unsecured, H.Rep.No.595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* (1978) U.S.Code Cong. & Ad.News 6296–97, thereby preventing a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.' *In re Frigitemp Corp.*, 8 B.R. 284, 289 (D.C.S.D.N.Y.1981) *citing Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir. 1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977)."

■ This court accordingly finds that Congress' enactment of the automatic stay provisions in 11 U.S.C. 362 pursuant to its federal bankruptcy power did not transgress the notions of federalism as contained in the tenth amendment of the United States Constitution.

■ This court also rejects the Commissioner's contention that the automatic

including any expenses incurred by the trustee in his administration of the estate. He also correctly asserts that all the administrative expenses set forth in 11 U.S.C. § 503 are to be satisfied on a *pro rata* basis. *See In re Western Farmers Association*, 13 B.R. 132, 134 (Bkrtcy. W.D.Wash.1981). This does not preclude the court, however, from subordinating pursuant to 11 U.S.C. § 510(c) the trustee's claim for administrative expenses *if* the court determines that the trustee had a duty to pay all taxes due to the Tennessee Department of Revenue before he continued to administer the estate under Chapter 11. *See generally Trone v. Smith (In re Westgate-California Corp.)*, 642 F.2d 1174, 1177–1178 (9th Cir. 1981); *Georgian Villa, Inc. v. City National Bank*, 10 B.R. 79, 85–86 (Bkrtcy.N.D.Ga.1981); *First National Bank v. Charles Blalock & Sons, Inc. (In re Just For the Fun of It of Tennessee, Inc.)*, 7 B.R. 166, 180–181 (Bkrtcy.E.D.Tenn.1980). Since this issue has not yet been raised, the court need not address it at the present time.

**8.** 11 U.S.C.S. § 505(c) (Law.Co-op.1979) provides:

"(c) Notwithstanding section 362 of this title, after determination by the court of a tax under this section, the governmental unit charged with responsibility for collection of such tax may assess such tax against the estate, the debtor, or a successor to the debtor, as the case may be, subject to any otherwise applicable law."

**9.** 11 U.S.C.S. § 362(d) (Law.Co-op.1979) provides in pertinent part:

"(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest. . . ."

**10.** 11 U.S.C.S. § 1112(b) (Law.Co-op.1979) provides in relevant part:

"(b) Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—
(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
(2) inability to effectuate a plan;
(3) unreasonable delay by the debtor that is prejudicial to creditors;
(4) failure to propose a plan under section 1121 of this title within any time fixed by the court. . . ."

stay as applied to the State of Tennessee violates the eleventh amendment to the United States Constitution.[11] The automatic stay simply delays the Commissioner from enforcing the State of Tennessee's tax claim against property of the estate. If the Commissioner initiates an adversary proceeding seeking relief from the automatic stay, the Commissioner is essentially requesting the bankruptcy court to permit the Department of Revenue to enforce a claim against property of the estate. The law is well settled that the eleventh amendment has no application where the state invokes the jurisdiction of a federal court. As the Supreme Court stated in *Gardner v. New Jersey*, 329 U.S. at 573–574, 67 S.Ct. at 471–472:

> "It is traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure... If the claimant is a State, the procedure of proof and allowance is not transmuted into a suit against the State because the court entertains objections to the claim. The State is seeking something from the debtor. No judgment is sought against the State. The whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a res. It is none the less such because the claim is rejected in toto, reduced in part, given a priority inferior to that claimed, or satisfied in some way other than payment in cash. When the State becomes the actor and files a claim against the fund, it waives any immunity which it otherwise might have had respecting the adjudication of the claim." (citations omitted).

The eleventh amendment only prohibits actions which are in essence proceedings "for the recovery of money from the state." *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945), *quoted in Connecticut v. Crisp*, 521 F.2d 172, 178 (2d Cir. 1975). *Accord Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *Connecticut v. Glidden*, 8 B.R. at 131–132, *aff'd* 653 F.2d at 89. The automatic stay certainly does not constitute such a proceeding.

■ Finally, this court concludes that the automatic stay prohibits the Commissioner from attempting to collect or assess the unpaid sales taxes in question from property of the estate. The Commissioner principally contends that the unpaid sales taxes accumulated by the debtor-in-possession created a trust fund on behalf of the State of Tennessee, which trust fund is not property of the estate and therefore may be levied upon by the State of Tennessee outside of the pending bankruptcy proceeding. The Commissioner relies upon certain portions of the legislative history of the Bankruptcy Code as reflected in the statements of Representative Edwards of California to support her trust fund theory. Representative Edwards' remarks concerning what constituted property of the estate were as follows:

> "As to withheld taxes, the House amendment deletes the rule in the Senate bill as unnecessary since property of the estate does not include the beneficial interest in property held by the debtor as a trustee. *Under the Internal Revenue Code of 1954 (section 7501), the amounts of withheld taxes are held to be a special fund in trust for the United States.* Where the Internal Revenue Service can demonstrate that the amounts of taxes withheld are still in the possession of the debtor at the commencement of the case, *then if a trust is created, those amounts are not property of the estate. Compare In re Shakesteers Coffee Shops*, 546 F.2d 821 (9th Cir. 1976) *with In re Glynn Wholesale Building Materials, Inc.*, (S.D. Ga.1978) and *In re Progress Tech Colleges, Inc.*, 42 Aftr.2d 78–5573 (S.D.Ohio 1977).

11. The eleventh amendment provides:

"The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

U.S.Const.Amend. XI.

Where it is not possible for the Internal Revenue Service to demonstrate that the amounts of taxes withheld are still in the possession of the debtor at the commencement of the case, present law generally includes amounts of withheld taxes as property of the estate. *See, e.g., United States v. Randall*, 401 U.S. 513 [91 S.Ct. 991, 28 L.Ed.2d 273] (1973) and *In re Tamasha Town and Country Club*, 483 F.2d 1377 (9th Cir. 1973). Nonetheless, a serious problem exists where 'trust fund taxes' withheld from others are held to be property of the estate where the withheld amounts are commingled with other assets of the debtor. *The courts should permit the use of reasonable assumptions under which the Internal Revenue Service, and other tax authorities, can demonstrate that amounts of withheld taxes are still in the possession of the debtor at the commencement of the case.* For example, where the debtor had commingled that amount of withheld taxes in his general checking account, it might be reasonable to assume that any remaining amounts in that account on the commencement of the case are the withheld taxes." (emphasis added).

124 Cong.Rec. H11,114 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards). *See also* 124 Cong.Rec. S17,413 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini).[12]

Representative Edwards' comments clearly indicate that, in order for a court to find a valid tax trust fund, there must first exist a statute which creates a trust fund in favor of the governmental taxing agency. Under Tennessee law, no such statute exists.[13] Nor does the mere

---

**12.** The legitimacy of statutory tax trusts under the bankruptcy laws has been a hotly contested issue. The federal circuit courts were initially divided on the question of what standards to utilize in determining whether a statutory trust existed on behalf of the government. *See* 4A Collier on Bankruptcy ¶ 70.25, at 349–350 (14th ed. 1978). In *United States v. Randall*, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971), the Supreme Court apparently resolved this issue by concluding that tax trust funds created either by federal or state statute were subject to the priority provisions established by the former Bankruptcy Act. The legislative history to the Bankruptcy Code, however, appears to either overrule or modify the Supreme Court's holding in *Randall* and reinstates the possibility of a statutory tax trust fund which is not property of the estate. *See* S.Rep.No.95–989, 95th Cong., 2d Sess. 82, *reprinted in* [1978] U.S.Code Cong. and Ad.News 5787, 5868; 124 Cong.Rec. S17,413 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini); 124 Cong.Rec. H11,114 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards). *See also Selby v. Ford Motor Co.*, 590 F.2d 642, 648 (6th Cir. 1979). Nevertheless, at least one commentator has suggested that, in a bankruptcy proceeding, statutory trusts should be treated in the same manner as statutory liens notwithstanding any legislative statements to the contrary. Schneyer, "Statutory Liens Under the New Bankruptcy Code—Some Problems Remain," 55 Am.Bankr.L.J. 1, 33 (1981).

**13.** Section 67–3033 of the Tennessee Code sets forth the Commissioner's remedies for the collection of delinquent sales taxes. Section 67–3033 provides in pertinent part:

"*Delinquency—Distress warrants—Collection of erroneous payments—Injunction—Lien—Recording.*—The tax imposed by this chapter shall for each month become delinquent on the twenty-first (21st) day of each succeeding month.

The commissioner of revenue is empowered and it shall be his duty when any tax becomes delinquent under this chapter to issue a distress warrant for the collection of the tax, interest, and penalty from each delinquent taxpayer. Said distress warrant may be addressed and delivered to the sheriff of the county wherein such delinquent taxpayer resides, or has his principal office or place of business, or to the sheriff of any county in which the commissioner has reason to believe property of such delinquent taxpayer may be found.

The sheriff into whose hands such warrant may come, or his deputy, may execute same by the distraint and sale of personal property belonging to such taxpayer and the proceedings in respect thereto shall be the same as are provided by law for proceedings under an execution at law from a court of record; and the executing officer shall be entitled to the same fees, commissions, and necessary expense of removing and keeping property distrained as in case of an execution from a court of record.

If the officer cannot find any personal property to satisfy said distress warrant, he may levy same upon any real estate in his county belonging to such delinquent taxpayer; and if levied on land, said distress warrant together with the officer's return thereon shall be returned to the circuit court of the county wherein the land lies and the land shall be condemned and sold under the orders of said circuit court in the same manner

failure of the debtor-in-possession to pay sales taxes as they become due create any type of constructive trust on behalf of the State of Tennessee. *See McKey v. Paradise,* 299 U.S. 119, 120–123, 57 S.Ct. 124, 125, 81 L.Ed. 75 (1936).

Even assuming that a tax trust fund existed, the Commissioner has not demonstrated, as required in both the aforementioned legislative history and by federal case law, that the tax funds collected by the debtor-in-possession can be traced to an identifiable trust in the hands of the present bankruptcy trustee. *See, e.g., Wisconsin v. Reese (In the Matter of Kennedy & Cohen, Inc.),* 612 F.2d 963, 966 (5th Cir. 1980); *Selby v. Ford Motor Co.,* 590 F.2d at 645; *Elliott v. Bumb,* 356 F.2d 749, 754 (9th Cir. 1966) *cert. denied sub. nom. Schutzbank v. Elliott,* 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966). The Commissioner is thus prohibited by 11 U.S.C. § 362 from attempting to collect or assess any unpaid tax funds from property of the estate. *See, e.g., Young v. Critton,* 8 B.C.D. 641, 641–642, 14 B.R. 809 (Bkrtcy.N.D.Ill.1981).

Accordingly, the court will enter an order declaring that the automatic stay provisions of 11 U.S.C. § 362 are constitutional as applied to the Commissioner for the Department of Revenue of the State of Tennessee and that 11 U.S.C. § 362 prohibits the Commissioner from pursuing any action to collect or assess the unpaid sales taxes in issue from property of the estate.

IT IS, THEREFORE, SO ORDERED.

as in case of the levy on land of an execution issued by a justice of the peace.

The commissioner, with the approval of the attorney-general, may file and maintain injunctive proceedings against any dealer who is delinquent or in default under this chapter to enjoin such dealer from doing business during such delinquency or default.

*The tax herein levied shall be a lien upon all the property of the dealer against whom the same is assessed* located in this state. . . ." (emphasis added).

Tenn.Code Ann. § 67–3033 (1976).