**In the Matter of the CROPPER COMPANY, INC., Debtor.**

**William M. FLATAU, Trustee, Plaintiff,**

v.

**F. Ray JACKSON, Tax Commissioner for Bibb County and City of Macon, and State of Georgia, Department of Revenue, Defendants.**

Bankruptcy No. 83–50305.
Adv. No. 85–5007.

United States Bankruptcy Court,
M.D. Georgia, Macon Division.

April 18, 1986.

See also, 35 B.R. 625.

---

26. *See supra* note 21, at 871–872.

Emmett L. Goodman, Jr., Macon, Ga., for F. Ray Jackson, Tax Com'r for Bibb Co. and City of Macon.

William M. Flatau, Macon, Ga., Trustee.

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

## STATEMENT OF CASE AND FINDINGS OF FACT

On March 17, 1983, The Cropper Company, Inc. (Debtor), filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On March 1, 1984, Debtor's case was con-verted to Chapter 7 of the Bankruptcy Code, and Mr. William M. Flatau was appointed as the trustee. As trustee, Mr. Flatau (Plaintiff), filed a complaint on January 25, 1985, against F. Ray Jackson, Tax Commissioner for Bibb County and the City of Macon (Defendant), and the State of Georgia, Department of Revenue.[1] Plaintiff asserts in his complaint that pursuant to section 724(b)[2] of the Bankruptcy Code, Defendant has no claim to any funds held by Plaintiff until all administrative expenses are paid in full. The parties filed a "Stipulation of Facts" on August 16, 1985. The following statement of facts is taken from that stipulation.

From 1982 to 1984, Defendant assessed Debtor for taxes in the amount of $4,950.76 on personal property owned by Debtor. During this period, Defendant also assessed Debtor for taxes totaling $5,675.31 on real property owned by Debtor and for intangible taxes totaling $247.22.

Plaintiff, as trustee of Debtor's bankruptcy estate, holds $64,697 that he realized from the sale of certain of Debtor's personal property and $16,870 from the sale of certain of Debtor's real property. All of the property sold, which resulted in $81,567 in total sales proceeds, was located in Bibb County, Georgia. Plaintiff abandoned all other personal property and real property owned by Debtor that was located in Bibb County.

On January 17, 1985, this Court granted Commercial Credit Business Loans, Inc. (Commercial Credit) a superpriority claim, which is classified as an administrative expense in the amount of $100,506.04 principal and $9,287.14 interest. Defendant asserts a lien for taxes on the $81,567 sales proceeds held by Plaintiff. The receipts on hand, together with the anticipated receipts in Debtor's bankruptcy case, will not exceed the superpriority claim held by Commercial Credit.

---

1. The State of Georgia, Department of Revenue, failed to timely file an answer within 30 days of the filing of Plaintiff's complaint as required by R.Bankr.P. 7012(a). The State of Georgia, De-partment of Revenue, therefore, is in default. *See* R.Bankr.P. 7055.

2. 11 U.S.C.A. § 724(b) (West 1979).

## CONCLUSIONS OF LAW

■ In determining the priority of liens, Defendant first asserts that Georgia law, not the Bankruptcy Code, is applicable because state law traditionally governs the priority of liens, giving absolute priority to tax liens. The Court recognizes that Georgia law governs the priority of liens in a nonbankruptcy situation. When a bankruptcy has been filed, however, the priority of liens as set forth by Congress in the Bankruptcy Code governs.[3]

> [T]he Supreme Court has recognized as a well-settled principle that a state's power to assess and collect state taxes must submit to the federal rules and regulations controlling the administration of the bankruptcy estate. *See, e.g., Gardner v. New Jersey*, 329 U.S. 565, 575–579, 67 S.Ct. 467, 472–474, 91 L.Ed. 504 (1947); *New York v. Irving Trust Co.*, 288 U.S. 329, 331–333, 53 S.Ct. 389, 390–391, 77 L.Ed. 815 (1933); *Van Huffel v. Harkelrode*, 284 U.S. 225, 228–229, 52 S.Ct. 115, 116, 117, 76 L.Ed. 256 (1931). *See also Springfield v. Hotel Charles Co.*, 84 F.2d 589, 591 (1st Cir.1936).[4]

*Olsen v. Deutscher (In re Nashville White Trucks, Inc.)*, 22 B.R. 578, 583, 9 Bankr.Ct. Dec. 616, 619, 7 Collier Bankr.Cas.2d 39, 43–44 (Bankr.M.D.Tenn.1982). The Court, therefore, rejects Defendant's assertion that Georgia law governs the determination of the priority of liens and holds that section 724(b) of the Bankruptcy Code governs the priority of liens in Debtor's bankruptcy case.

■ Having determined that section 724(b) is applicable, the Court next addresses Defendant's constitutional challenge to section 724(b). Defendant argues that a subordination of city, county, and state tax liens pursuant to section 724(b) violates the tenth amendment to the United States Constitution[5] because it interferes with a state's ability to fulfill its governmental responsibilities. The court in *Forell v. Kent County Treasurer & City of Grand Rapids Treasurer (In re Kamstra)*,[6] recently addressed this issue and held that section 724(b) of the Bankruptcy Code does not violate the tenth amendment. 51 B.R. 826 at 831–32, 13 Bankr.Ct.Dec. at 404–05, 13 Collier Bankr.Cas.2d at 272–74. This Court agrees with the reasoning set forth by the court in *In re Kamstra* and likewise holds that section 724(b) does not violate the tenth amendment to the United States Constitution. *See also Richardson v. First Federal Savings & Loan Association (In re Stroud Wholesale, Inc.)*, 37 B.R. 735, 738–39 (Bankr.E.D.N.C.1984), *rev'd sub nom. on other grounds, Richardson v. Pitt County (In re Stroud Wholesale, Inc.)*, 47 B.R. 999 (D.E.D.N.C.1985).

■ The Court now turns to the question of whether Defendant's lien for taxes, which he had on certain personal and real property of Debtor, has priority under section 724(b)[7] of the Bankruptcy Code over a

---

**3.** "Priorities are designed to assure payment, if possible, to certain classes of claims.... In considering the question of priorities, it must be stressed that priorities are fixed by Congress...." 3 Collier on Bankruptcy ¶ 507.02[1], [3] (15th ed. 1985).

**4.** "If a state desires to participate in the assets of a bankrupt, she must submit to appropriate requirements by the controlling power; otherwise, orderly and expeditious proceedings would be impossible and a fundamental purpose of the Bankruptcy Act would be frustrated." *New York v. Irving Trust Co.*, 288 U.S. at 333, 53 S.Ct. at 391.

**5.** U.S. Const. amend. X.

**6.** 51 Bankr. 826, 13 Bankr.Ct.Dec. 401, 13 Collier Bankr. Cas.2d 266 (Bankr.W.D.Mich.1985).

**7.** Section 724(b) provides as follows:
(b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for taxes, or proceeds of such property, shall be distributed—
(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;
(2) second, to claims specified in sections 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), and 507(a)(5) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;
(3) third, to the holder of such tax lien, to any extent that such holder's allowed claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

section 507(b) [8] superpriority administrative claim. The legislative history to section 724(b) sets forth the order of distribution of property subject to a tax lien as follows:

First, to holders of liens senior to the tax lien; second, to administrative expenses, wage claims, and consumer creditors that are granted priority, but only to the extent of the amount of the allowed tax claim secured by the lien. In other words, the priority claimants step into the shoes of the tax collector. Third, to the tax claimant, to the extent that priority claimants did not use up his entire claim. Fourth, to junior lien holders. Fifth, to the tax collector to the extent that he was not paid under paragraph (3). Finally, any remaining property goes to the estate.

H.R. No. 595, 95th Cong., 1st Sess. 382 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6338. Under section 724(b), tax liens are subordinated to holders of claims specified in section 507(a)(1)-(5).[9] *In re Kamstra,* 51 B.R. at 833, 13 Bankr.Ct. Dec. at 405, 13 Collier Bankr.Cas.2d at 275. Section 507(a)(1) grants first priority to "administrative expenses allowed under section 503(b) of this title...." 11 U.S.C.A. § 507(a)(1) (West 1979). Generally, administrative expenses include all of the expenses incurred after the order for relief that are necessary to administer the estate, including any taxes incurred during the administration of the estate. 3 Collier on Bankruptcy ¶ 507.-04[1][a] (15th ed. 1985). Within the administrative expense category itself, certain claims are entitled to be paid ahead of all other administrative claims. Claims granted pursuant to section 507(b) have such "superpriority" status over all other first priority administrative claims. 3 Collier on Bankruptcy ¶ 507.04[1][b] (15th ed. 1985).

■ The Court notes that under its order dated January 17, 1985, Commercial Credit was granted a superpriority administrative claim pursuant to section 507(b). In the order, Commercial Credit was given priority over every other administrative claim allowable under section 507(a)(1), subject only to the priorities established by this Court's order dated January 3, 1985. *In re The Cropper Company, Inc.,* No. 83–50305 (Bankr.M.D.Ga. January 17, 1985). Based upon the priority afforded by sections 507(a) and (b), the Court concludes that Defendant's lien for taxes which he had on Debtor's personal and real property is subordinate under section 724(b) to Commercial Credit's superpriority administrative claim.

(4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;
(5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and
(6) sixth, to the estate.
11 U.S.C.A. § 724(b) (West 1979).

8. Section 507(b) provides:
(b) If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.
11 U.S.C.A. § 507(b) (West 1979).

9. 11 U.S.C.A. § 507(a)(1)-(5) (West 1979). The Bankruptcy Amendments and Federal Judgeship Act of 1984 amended section 507 of the Bankruptcy Code. This opinion refers to section 507 as it existed prior to that amendment because section 553(a) of the 1984 Act, Pub. L. No. 98–353, provided that the amendments, with some exceptions irrelevant to this proceeding, would apply to cases filed after 90 days after enactment. That cutoff date is October 8, 1984, and this case was filed on March 17, 1983. *See In re Kamstra,* 51 B.R. at 833, 13 Bankr.Ct.Dec. at 405, 13 Collier Bankr.Cas.2d at 275.