Raul F. **RODRIGUEZ**, et al., Plaintiffs,

v.

**BANCO CENTRAL**, et al., Defendants.

Civ. No. 82–1835(JAF).

United States District Court,
D. Puerto Rico.

May 11, 1994.

---

9. The relevant legislative history is sparse and not instructive.

Harry E. Woods, Fernando L. Gallardo, Woods & Woods, and Francisco M. López–Romo, San Juan, PR, for plaintiffs.

Ivonne Cruz–Serrano, Sanchez–Betances & Sifre, San Juan, PR, for Banco Cent.

James G. McLaughlin IV, San Juan, PR, for Colón Nevares and Martínez–Echevarría.

### OPINION AND ORDER

FUSTE, District Judge.

As the final chapter in this epic lawsuit, we have before the court the motions of several defendants for attorneys' fees and sanctions. We briefly summarize the relevant features of the convoluted path of this litigation.

The case was originally filed as a class action in 1982. Plaintiffs, purchasers of real estate in Florida, alleged causes of action under the Interstate Land Sales Full Disclosure Act, the Securities and Exchange Act of 1934, and the Organized Crime Control Act (RICO). After four years and a detour to the court of appeals, class certification was denied in 1987. After the filing of an amended complaint, defendants filed a motion for summary judgment in 1988. In response to that motion, we disposed of plaintiffs time-barred claims under the Interstate Land Sales Full Disclosure Act and the Securities and Exchange Act. *Rodriguez v. Banco Central*, 727 F.Supp. 759 (D.P.R.1989). In

addition, the motion for summary judgment was granted as to the RICO claims under section 1962(a) of the RICO statute; however, we found that there remained issues of fact about the viability of a RICO claim under section 1962(c) of the statute. We certified five questions for interlocutory appeal to the court of appeals, one of which was addressed by the circuit court. *See Rodriguez v. Banco Central,* 917 F.2d 664 (1st Cir.1990). A third amended complaint was filed in order to state a claim under section 1962(c) of the RICO statute. The case finally went to trial on the section 1962(c) RICO claim on August 5, 1991. Following a seven-week trial, we granted defendants' motion for a directed verdict. *Rodriguez v. Banco Central,* 777 F.Supp. 1043 (D.P.R.1991). The court of appeals affirmed the judgment, *Rodriguez v. Banco Central Corp.,* 990 F.2d 7 (1st Cir.1993).

Codefendants Banco Central, Jorge Colón Nevares, and Juan Martínez Echevarría have now filed motions requesting attorneys' fees and sanctions pursuant to Fed.R.Civ.P. 11 and 18 U.S.C. § 1927. The defendants seek such a remedy against counsel alone, not against any individual plaintiffs.

## I.

### Legal Standards

#### A. Fed.R.Civ.P. 11

The purpose of Rule 11 is to deter dilatory and abusive strategies in litigation,

and to streamline the litigation process by decreasing frivolous pleadings. *Cruz v. Savage,* 896 F.2d 626, 630 (1st Cir.1990).[1] Rule 11 allows sanctions if either (1) a pleading, motion or paper has been interposed for an improper purpose or (2) after reasonable investigation, a competent attorney could not form a reasonable belief that the pleading, motion or paper is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law. *Lancellotti v. Fay,* 909 F.2d 15, 19 (1st Cir.1990). Rule 11 sanctions do not require a finding of bad faith. *Id.* The test as to whether an attorney made a reasonable inquiry prior to signing a pleading is an objective standard of reasonableness under the circumstances at the time the attorney acted. *Cruz,* 896 F.2d at 631. Of course, in determining whether sanctions are appropriate, courts must avoid chilling the legal bar's enthusiasm or creativity. *Id.*

#### B. 28 U.S.C. § 1927

Defendants also suggest that sanctions against plaintiffs' attorneys are proper under 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be re-

---

1. Fed.R.Civ.P. 11 provides in pertinent part:

    The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Rule 11 was substantially amended in 1993. The amendment became effective on December 1, 1993, and is "applicable to all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending." Among other changes, the imposition of sanctions is now discretionary rather than mandatory. The First Circuit has declined to apply the new amendment to conduct which occurred prior to December 1, 1993. *Silva v. Witschen,* 19 F.3d 725, 728 (1st Cir.1994). *See also Knipe v. Skinner,* 19 F.3d 72 (2d Cir.1994); *Alexander v. City of Wichita,* 1994 WL 36313, 1994 U.S.Dist. LEXIS 1252 (D.Kan. Jan. 28, 1994); *Agretti v. ANR Freight Sys.,* 1994 WL 46670, 1994 U.S.Dist. LEXIS 1433 (N.D.Ill. February 14, 1994). Because all potentially sanctionable conduct in this case took place before December 1993, and the motions for sanctions were filed before that date, we will apply the version of Rule 11 which existed prior to the 1993 amendment.

quired by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

█ The First Circuit does not require a finding of subjective bad faith in order to impose sanctions under § 1927. *Cruz,* 896 F.2d at 632. Sanctions under the section are appropriate when counsel's conduct has multiplied the proceedings and, in doing so, has been unreasonable and vexatious, in the sense of being harassing or annoying. *Id.* While negligence, inadvertence or incompetence does not mandate sanctions, actions taken in disregard of whether the conduct is harassing or vexatious may result in sanctions under this section. *Id.*

## II.

### Discussion

The crux of the determination as to whether attorney's fees and sanctions should be granted, then, is whether the documents signed by counsel were unreasonable in light of the existing state of law and facts, or whether the actions of counsel unreasonably multiplied the proceedings.

█ As summarized above, the original complaint alleged violations of the Interstate Land Sales Act, the Securities Exchange Act, and RICO. Although we determined that the Land Sales Act and the securities fraud act were time-barred, and that no cause of action was stated under section 1962(a) of the RICO statute, we also certified questions regarding several aspects of the holding to the court of appeals. We cannot say that at this initial stage of the proceedings, counsel for the plaintiffs were acting without a reasonable basis for believing that plausible grounds for a legal action existed. We also do not find that up until this time, counsel behaved in a vexatious or harassing manner. In the 1989 opinion and order regarding the motion for summary judgment, we gave the plaintiffs leave to replead the section 1962(c)

RICO claim, recognizing that there might be a cause of action based upon that section. The Third Amended Complaint, on the suggestion of the court, contained only a cause of action under section 1962(c) of RICO, with securities fraud as the predicate acts. Basically, following our denial of summary judgment on the section 1962(c) claim and certification of the interlocutory appeal to the court of appeals, there remained a possibility that facts could be developed at trial to state a claim under civil RICO. However, the fact that a party survives a motion for summary judgment is not dispositive of whether that party is liable for sanctions: "[T]he summary judgment standard (based on filed documents) and Rule 11's standard (based on what reasonable inquiry should have revealed, perhaps about *other* information) [are not] necessarily or inevitably congruent." *Muthig v. Brant Point Nantucket, Inc.,* 838 F.2d 600, 606 (1st Cir.1988) (allowing Rule 11 sanctions against a party who survived a motion for summary judgment); *see also Media Duplication Services v. HDG Software,* 928 F.2d 1228, 1240, n. 10 (1st Cir.1991).[2]

█ The defendants now moving for sanctions were included in the RICO cause of action on an aiding and abetting theory, due to the fact that these defendants were only involved in financing the sale of the land. In ruling on the motion for summary judgment, we found that these defendants could not be directly liable as there was no direct nexus between the financier's actions and the predicate acts. However, we found that under an aiding and abetting theory, there could arguably be sufficient evidence in the record to raise a triable issue of fact. At that time, however, we admonished the parties that "the question of [the financier's] liability will not reach the jury absent specific evidence at trial indicating their participation as an aider and abettor of the fraud." *Rodriguez v. Banco Central,* 727 F.Supp. at 775 n. 19. Many of the allegations made prior to the motion for summary judgment were never established at trial. For example, plaintiffs

---

**2.** We recognize that the Notes of the Advisory Committee regarding the 1993 amendments to Rule 11 state: "If a party has evidence with respect to a contention that would suffice to defeat a motion for summary judgment based thereon, it would have sufficient 'evidentiary support' for purposes of Rule 11." However, as explained above, we will apply the pre-amendment Rule 11 jurisprudence to this case.

alleged that the financier defendants were aware that much of the land was swampy and subject to flooding, while at trial there was no evidence that those defendants were aware of the suitability of the land for development. After the conclusion of the trial, we found that the plaintiffs had established

> [a]bsolutely no evidence, no smoking gun, to link ... any of the ... natural person defendants involved in financing, with knowledge of the fraudulent land sales campaign.... For us to allow a verdict to issue against these individuals on this evidence would be to hold them in a constructive knowledge theory solely for their holding the position of director, an imputation clearly rejected by the precedent cited above.

*Rodriguez v. Banco Central,* 777 F.Supp. at 1062.

As to defendant Banco Central, we found that because there was no individual liability on the part of the financing defendants, there could be no respondent superior liability on the part of the employer bank. *Id.*[3] In a further exoneration of Banco Central, we found that even if Banco Economías had been liable as an aider and abettor to a RICO violation, Banco Central would not have acquired such liability through the purchase of Banco Economías. The fact that Banco Central was never directly involved in the allegedly fraudulent land transactions makes the attempt to collect damages from the bank even more obviously vexatious.

This case in particular presented a situation where plaintiffs carried a heavy burden of assessing the merits of their case before proceeding to trial. We recognized at the time of the summary judgment motion that the natural person financiers were aggressive businessmen and that the challenged land transactions were not the type with which a fiscally-conservative banking institution would have become involved. Given this analysis, we went out of our way to allow the plaintiffs the opportunity to try their case. The accommodations made for plaintiffs are clear from the record. *See Rodriguez,* 990

F.2d at 12 (noting that this court "took steps to preserve what claims [we] could for the buyers" and "permitted the buyers to go to trial on ... marginal RICO security claim[s]"). Such beneficial treatment at the latter stage of this litigation made it incumbent upon plaintiffs to examine their evidence honestly, and to spare the legal system and the defendants the expense and effort of a trial once they realized that no triable issue existed.

In short, plaintiffs had no evidence with which to prove a violation of RICO on the part of these defendants. As has been noted, "[t]here is a point beyond which zeal becomes vexation, the 'novel' approach to a legal issue converts to frivolity and steadfast adherence to a position transforms to obdurateness." *Cruz v. Savage,* 691 F.Supp. 549, 556 (D.P.R. 1988). The plaintiffs' attorneys reached and surpassed this point in continuing to litigate this case when it became clear that any viable legal theory, especially as to these defendants, had long before been foregone. The remaining legal claim had no basis in fact.

There are some special factors which may militate against granting sanctions. The First Circuit has considered whether counsel is "an understaffed sole practitioner seeking to aid a client who has been hurt by the defendant but who is uncertain about the exact legal vehicle for redress," or whether he is attempting to make new law. *Muthig,* 838 F.2d at 605. We recognize that this case is one in which the plaintiffs were very sympathetic, and we understand the difficulties in handling a case with such a multitude of clients. However, counsel had ample time during the course of this litigation to reflect upon whether the job was overwhelming and necessitated additional legal expertise. The wrongs allegedly perpetrated upon the plaintiffs do not excuse counsel's attempt to reach innocent parties with deep pockets when there was no evidence linking them to the alleged misdeeds. In addition, with respect to these defendants, it was not the misguided attempt to forge new law which led to the

---

**3.** The bank which actually financed the land sales was Banco Economías, the original defendant in this litigation. Banco Central later pur- chased the assets and liabilities of Banco Economías and was substituted as a defendant.

directed verdict; rather, it was the complete paucity of evidence necessary to find the financiers liable under established law.

It is difficult to pinpoint the actual moment at which counsel should have realized that there was no purpose in perpetuating with this lawsuit. After the motion for summary judgment was denied as to the 1962(c) claims, there may have still been a chance that further inquiry would generate a factual basis for the securities fraud predicate acts. We cannot say that at the time of filing the amended complaint, on December 18, 1989, the plaintiffs were or should have been aware of the futility of continuing. However, the First Circuit has found that Rule 11 imposes upon counsel a duty, after submitting filings, to reassess their clients' claims throughout the litigation. *Kale v. Combined Ins. Co. of America*, 861 F.2d 746 (1st Cir.1988). The demarcation which we will observe for the purpose of sanctions is the first day of the trial, August 5, 1991. By that juncture, plaintiffs' attorneys were certainly aware that there was no factual basis for their claim, and that to continue the lawsuit was unreasonable. Continuing to litigate after that point was more than mere negligence; it evidenced disregard for whether the litigation was vexatious. All actions from that point forward are, therefore, sanctionable under both Rule 11 and 28 U.S.C. § 1927.[4] We are aware that the Woods & Woods law firm did not become counsel of record until after the amended complaint, signed by Francisco López–Romo, was filed. However, due to our finding of liability under 28 U.S.C. § 1927, the lack of a signed pleading is irrelevant. Harry Woods is experienced in civil RICO litigation, and his firm participated in

the trial, which we have deemed to have occurred in violation of Rule 11 and section 1927. Because it is the actions beginning with the start of the trial which we find objectionable, the attorneys to be sanctioned are the lead trial attorneys, Francisco López–Romo and Harry Woods.[5]

## III.

### Amount of Sanctions

Prior to the 1993 amendments, Rule 11 read:

> If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

■ The parties suggest that attorneys' fees are the appropriate sanctions to impose in this case. Sanctions are meant to deter and punish litigation abuse, facilitate case management, and compensate victims. *Navarro–Ayala v. Núñez*, 968 F.2d 1421, 1426 (1st Cir.1992).[6] The First Circuit has recognized that "a monetary sanction aimed at deterrence is appropriate only when the amount of the sanction falls within the minimum range reasonably required to deter the abusive behavior." *Id.* at 1427. Where the sanction is designed to be compensatory, it may only cover those costs which were reasonably incurred. *Id.* Of course, determin-

---

4. To the extent that the defendants also invoke our inherent power to sanction the plaintiffs' attorneys, we find that Rule 11 and section 1927 are adequate to address the current situation and, therefore, we need not rely on our inherent power. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

5. Attorney Fernando Gallardo, of the Woods & Woods firm, who participated in the trial under the direction of Harry Woods, was not lead counsel and was not involved in the decision-making process. Therefore, he will not be sanctioned. In addition, we recognize that numerous attorneys participated over the years in this protracted litigation. The following attorneys were not

involved in the lawsuit at the point which we have determined that sanctionable conduct began: Marisa Brugueras, Nilsa N. Calabria, Lydia Lizarribar, Alberto Tellechea, and Russell del Toro. None of these attorneys are liable for the fees and sanctions imposed in this order.

6. The 1993 amendments to Rule 11 provide that "a sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Apparently, compensation of injured parties is no longer the purpose of such sanctions.

ing what amount is necessary to deter wrongful behavior is difficult and necessarily somewhat arbitrary. Because the amount of the opposing party's attorneys' fees may provide some guidance to approximate deterrence costs, and because section 1927 grants the remedy of attorney fees, we will begin with that basis in order to determine the amount of sanctions to be awarded. This opinion should not be taken to indicate that full attorneys' fees will necessarily be granted; rather, once the requested information has been provided, we will analyze the amount appropriate to the goals of deterrence and compensation.

To this end, we request the movants to submit to the court, **within twenty (20) days,** a breakdown of hours expended on this case beginning with the first day of the jury trial, as well as affidavits regarding the appropriate hourly fee for similarly-situated attorneys. The court is aware that Attorney James G. McLaughlin is the son-in-law of defendant Jorge Colón Nevares. In light of the possibility that this relationship may have altered the usual fee arrangements, Mr. McLaughlin must also submit contemporaneous invoices and proof of payments by his clients in order to recover any fees. Once all of the information has been provided, we will determine the proper amount of sanctions.

**IT IS SO ORDERED.**