**Dean CLANCY, Stacey S. Clancy and Dylan S. Clancy, a Minor, by his Next Friend, Stacey S. Clancy, Plaintiffs,**

v.

**MOBIL OIL CORPORATION, Defendant.**

Civ. A. No. 93–11922–RCL.

United States District Court,
D. Massachusetts.

Oct. 30, 1995.

**44**

Terance P. Perry, Brendan J. Perry, Holliston, MA, for Plaintiffs.

Norman A. Peloquin II, F. Dore Hunter, Flanagan & Hunter, Boston, MA, Geoffrey A. Smith, Mobil Corporation, Fairfax, VA, for Defendant.

LINDSAY, District Judge.

Report and Recommendation accepted.

## REPORT AND RECOMMENDATION RE: PARTIAL MOTION TO DISMISS CLAIMS FOR PUNITIVE DAMAGES AND LOSS OF CONSORTIUM/SOCIETY *(DOCKET ENTRY # 24)*

September 20, 1995.

BOWLER, United States Magistrate Judge.

Pending before this court is a motion to partially dismiss certain counts in the complaint seeking recovery of punitive damages and loss of consortium. (Docket Entry # 24). After conducting a hearing (Docket Entry # 38), this court took the motion under advisement.

### BACKGROUND

Plaintiffs Dean E. Clancy ("Dean Clancy"), an injured seaman, Stacey S. Clancy ("Stacey Clancy"), his wife, and Dylan S. Clancy ("Dylan Clancy"), the Clancy's minor son (collectively: "plaintiffs"), filed this personal injury action against defendant Mobil Oil Corporation ("defendant") on the basis of diversity and federal question jurisdiction, 46 U.S.C.App. § 688 and 28 U.S.C. § 1337 seeking recompense due to injuries suffered by Dean Clancy in March 1992 as the result of a fall while on board the Tamaha, a vessel operated and controlled by defendant.

For purposes of resolving the instant motion, this court need not summarize the facts at length. Taking the facts in the complaint as true and reasonable inferences therefrom, *Vartanian v. Monsanto Company,* 14 F.3d 697, 700 (1st Cir.1994) (stating standard of review applicable to motion to dismiss), Dean Clancy was a seaman and in March 1992, after the conception of his son, suffered an injury while employed as a member of the crew aboard the Tamaha. Specifically, on March 25, 1992, the Tamaha, a tugboat, was in the process of transporting a barge from one slip to another slip in Port Mobil, Staten Island, New York. Hydraulic oil began leaking in large quantities in the engine room and, upon viewing this problem, Dean Clancy, Chief Engineer at the time, proceeded to repair the leak and wash down the area. During the performance of these employment related duties, Dean Clancy slipped and

fell due to an accumulation of oil on one of the ladder well stairs leading to the engine room.

Plaintiffs' 21 count complaint alleges liability for: (1) negligence and breach of contract under the Jones Act, 46 U.S.C.App. § 688 ("the Jones Act") (counts I–IX, XIII, XIV and XV); (2) maintenance and cure under general maritime law (Count X); (3) breach of the warranty of unseaworthiness under general maritime law (Count XI); and (4) intentional infliction of emotional distress under general maritime law (Count XII). In addition to the foregoing counts, plaintiffs bring the following counts which are the subject of the motion to dismiss: (1) Count XVI for punitive damages under general maritime law by Dean Clancy; (2) Count XVII for punitive damages under the Jones Act by Dean Clancy; (3) Count XVIII for loss of consortium under New Hampshire law by Stacey Clancy; (4) Count XIX for loss of consortium under general maritime law by Stacey Clancy; (5) Count XX for loss of consortium under New Hampshire law by Dylan Clancy; and (6) Count XXI for loss of consortium under general maritime law by Dylan Clancy.

## DISCUSSION

Plaintiffs do not oppose the dismissal of the counts for punitive damages under general maritime law and the Jones Act brought by Dean Clancy (counts XVI and XVII) and the counts for loss of consortium under general maritime law brought by Stacey and Dylan Clancy (counts XIX and XXI). Indeed, the weight of authority and direct precedent in this circuit, *Horsley v. Mobil Oil Corporation*, 15 F.3d 200, 201–202 (1st Cir.1994) (general maritime law makes punitive damages unavailable to injured seaman and loss of parental and spousal society

damages unavailable to minor child and spouse of injured seaman), compel the finding that an injured seaman cannot recover nonpecuniary losses such as punitive damages under the Jones Act or under general maritime law and that the spouse and children of an injured seaman cannot recover for loss of consortium under general maritime law. *Miles v. Apex Marine Corporation*, 498 U.S. 19, 31, 111 S.Ct. 317, 325, 112 L.Ed.2d 275 (1990) ("*Miles*") (damages recoverable to nondependent parent in wrongful death action under general maritime law do not include nonpecuniary losses such as loss of society);[1] *Guevara v. Maritime Overseas Corporation*, 59 F.3d 1496, 1513 (5th Cir. 1995) (in light of *Miles*, punitive damages unavailable to injured seaman for wilful nonpayment of maintenance and cure under general maritime law); *Glynn v. Roy Al Boat Management Corporation*, 57 F.3d 1495, 1505 (9th Cir.1995) (punitive damages unavailable in action for maintenance and cure by nonfatally injured seaman); *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1407 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1314, 131 L.Ed.2d 196 (1995) (recognizing that loss of society damages are unavailable in connection with injury of Jones Act seaman); *Lollie v. Brown Marine Service, Inc.*, 995 F.2d 1565, 1565 (11th Cir.1993) ("neither the Jones Act nor general maritime law authorizes recovery for loss of society or consortium in personal injury cases"); *Miller v. American President Lines, Ltd.*, 989 F.2d 1450, 1457–1459 (6th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993) (Jones Act, which incorporates damages recovery provision of Federal Employers' Liability Act, bars recovery of nonpecuniary damages thereby precluding punitive damages award in unseaworthiness action for wrongful death); *Michel v. Total Transportation, Inc.*, 957 F.2d 186, 191 (5th Cir.1992)

---

1. The Supreme Court in *Miles* explicitly limited the holding in *Sea–Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974) (dependent in wrongful death action could recover for nonpecuniary loss of society resulting from death of longshoremen in territorial waters), to apply only to longshoreman and only in territorial waters. *Miles v. Apex Marine Corporation*, 498 U.S. at 31–32, 111 S.Ct. at 325–326; *accord Miller v. American President Lines, Ltd.*, 989 F.2d 1450, 1458–1459 (6th Cir.), *cert. denied*, —— U.S.

—— , 114 S.Ct. 304, 126 L.Ed.2d 252 (1993) (although never overruled, holding of *Gaudet* "is virtually meaningless" and in light of *Miles* and statutory enactment *Gaudet* has "been condemned to a kind of legal limbo: limited to its facts, inapplicable on its facts, yet not overruled"); *Murray v. Bertucci Construction Company, Inc.*, 958 F.2d 127, 130 (5th Cir.), *cert. denied*, 506 U.S. 865, 113 S.Ct. 190, 121 L.Ed.2d 134 (1992) (discussing *Gaudet* as limited by *Miles*).

(reversing lower court's award of loss of consortium under general maritime law to spouse of injured seaman); *Rollins v. Peterson Builders, Inc.*, 761 F.Supp. 943, 948–950 (D.R.I.1991) (striking punitive damages claim in wrongful death action brought by parents under general maritime law).

The Jones Act explicitly covers nonfatal actions for personal injuries suffered by seaman, *Guevara v. Maritime Overseas Corporation*, 59 F.3d 1496, 1506–1507 (5th Cir. 1995), but limits such relief to pecuniary losses. *Murray v. Bertucci Construction Company*, 958 F.2d 127, 131–132 (5th Cir.), *cert. denied*, 506 U.S. 865, 113 S.Ct. 190, 121 L.Ed.2d 134 (1992) ("Jones Act limits a seaman's recovery for injury to pecuniary losses and precludes recovery for nonpecuniary losses"). Extending relief under general maritime law to permit an injured seaman to recover nonpecuniary losses such as punitive damages or allowing a spouse and/or minor child of an injured seaman to recover nonpecuniary losses such as loss of consortium results in more expansive remedies in a judicially created cause of action where liability is without fault than Congress provided in a federal statutory cause of action premised on negligence. *Murray v. Bertucci Construction Company*, 958 F.2d at 131–132 (discussing *Miles* and vacating jury award to spouse and children of injured seaman for loss of society).

Following the holdings of the aforementioned cases and in light of plaintiffs' lack of objection (Docket Entry # 26, p. 2), counts XVI, XVII, XIX and XXI are subject to dismissal. Plaintiffs strenuously object, however, to the dismissal of the loss of consortium claims brought by Stacey and Dylan Clancy under state law.[2] Plaintiffs theorize that because state law remedies implicate an area of state concern and supplement general maritime law, they are not preempted. Plaintiffs also assert that precluding the state law causes of action violates the Tenth Amendment. Finally, they argue that preserving such causes of action balances state sovereignty and federalism and allows states to craft their own consortium claims tailored to the individual needs of their citizens. (Docket Entry # 26).

Stacey and Dylan Clancy's loss of consortium claims arise by virtue of state law. N.H.Rev.Stat.Ann. § 507:8–a. Nevertheless, the injury, which occurred to a Jones Act seaman on navigable waters, is maritime in nature and implicates the admiralty jurisdiction of this court.[3] Thus, although plaintiffs filed this action, in part, on the basis of diversity jurisdiction, maritime law displaces state law even where the underlying cause of action is created by state statute "and federal court jurisdiction happens to be based on diversity." *Southworth Machinery Compa-*

2. Plaintiffs brought these claims under New Hampshire law which provides recovery for loss of consortium for injuries to either a husband or wife by statute. N.H.Rev.Stat.Ann. § 507:8–a; *Canino v. Londres*, 862 F.Supp. 685, 690 (D.N.H. 1994) (wife's claim for loss of consortium for wrongful death under New Hampshire law arose by statute). New York law similarly permits derivative claims for loss of consortium in the event of a physical injury to the injured spouse. *Stander v. Orentreich*, 627 N.Y.S.2d 879, 884 (N.Y.Sup.1995) (loss of consortium claim under New York law is derivative and requires underlying viable cause of action such as for negligence); *Collins v. Willcox, Inc.*, 158 Misc.2d 54, 600 N.Y.S.2d 884, 886 (N.Y.Sup.1992). Inasmuch as claimants may recover loss of consortium damages under both New Hampshire and New York law, this court need not resolve the underlying issue of what state law to apply to an injury which occurred in New York territorial waters. Rather, this court will assume, *arguendo*, the application of New Hampshire law as plead in the complaint.

3. Admiralty jurisdiction over a tort requires that "the wrong bear a significant relationship to a traditional maritime activity." *Executive Jet Aviation v. City of Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972); *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 207 n. 4 (1st Cir.1988); *Austin v. Unarco Industries, Inc.*, 705 F.2d 1, 8–9 (1st Cir.), *cert. dismissed*, 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983) (quoting *Executive Jet*). The situs of the tort took place on navigable waters. The nature of Dean Clancy's activity at the time of his injury was in the service of the Tamaha in repairing and washing the engine room. Such service implicates that safety of the vessel and is necessary in order for the vessel to carry out its maritime duties. *See Austin v. Unarco Industries, Inc.*, 705 F.2d at 11 (quoting *Atlantic Transport Co. v. Imbrovek*, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208 (1914)). The subject matter of the instant dispute therefore falls within the admiralty jurisdiction of this court.

*ny, Inc. v. F/V Corey Pride*, 994 F.2d 37, 41 (1st Cir.1993) (citing *Templeman v. Chris Craft Corporation*, 770 F.2d 245, 250 (1st Cir.), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985)).

"'[T]he extent to which state law may be used to remedy maritime injuries is constrained by a so-called "reverse-Erie" doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards.'" *Ballard Shipping Company v. Beach Shellfish*, 32 F.3d 623, 626 (1st Cir.1994) (quoting *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 223, 106 S.Ct. 2485, 2494, 91 L.Ed.2d 174 (1986)); *see also Southworth Machinery Company, Inc.*, 994 F.2d 37, 41 (1st Cir.1993) (also quoting this statement in *Tallentire* ). Although "the line separating permissible from impermissible state regulation" is oftentimes not readily ascertainable or "consistent within our admiralty jurisprudence," *American Dredging Company v. Miller*, ─── U.S. ───, ───, 114 S.Ct. 981, 987, 127 L.Ed.2d 285 (1994), state law is generally preempted where "'it contravenes the essential purpose expressed by an act of Congress, or works material prejudice to the characteristic features of the general maritime law,[4] or interferes with the proper harmony and uniformity of that law in its international and interstate relations.'" *Ballard Shipping Company v. Beach Shellfish*, 32 F.3d at 627 (quoting *Southern Pacific Company v. Jensen*, 244 U.S. 205, 216, 37 S.Ct. 524, 529, 61 L.Ed. 1086 (1917) and stating that *American Dredging* reaffirmed *Jensen* ). Stated otherwise, "where the subject-matter falls within the admiralty jurisdiction, state law may 'supplement' federal maritime law but may not directly contradict it." *Southworth Machinery Company, Inc.*, 994 F.2d at 41 (attorneys fee provision in state statute, "being inconsistent with maritime law, cannot be applied in this case"); *see, e.g., Kossick v. United Fruit Co.*, 365 U.S. 731,

738–741, 81 S.Ct. 886, 891–894, 6 L.Ed.2d 56 (1961) (refusing to apply New York statute of frauds to invalidate an oral maritime contract); *Ellenwood v. Exxon Shipping Company*, 984 F.2d 1270, 1280 (1st Cir.), *cert. denied*, ─── U.S. ───, 113 S.Ct. 2987, 125 L.Ed.2d 682 (1993) (allowing application of state human rights law where maritime law did not address handicap discrimination); *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 207 (1st Cir.1988) (Massachusetts comparative negligence law deemed incompatible with maritime law and therefore inapplicable); *Fireman's Fund American Insurance Co. v. Boston Harbor Marina*, 406 F.2d 917, 919 & 921 (1st Cir.1969) (state law applied inasmuch as contract for storage of boats ashore invested with strong local interest).

Under either framework, the state law claims in the case at bar must yield to the paramount federal interest in uniformity in light of the fact that Congress, through the Jones Act, has addressed already what remedies are available to seamen injured in territorial waters. The Jones Act does not extend recovery to a spouse for the loss of consortium due to the nonfatal injury of a seaman. *Chan v. Society Expeditions, Inc.*, 39 F.3d at 1407; *Lollie v. Brown Marine Service, Inc.*, 995 F.2d at 1565 (Jones Act does not permit recovery for loss of consortium in personal injury case); *Smith v. Trinidad Corporation*, 992 F.2d 996, 996 (9th Cir.1993) (spouses of injured seaman cannot recover for loss of consortium under Jones Act). Similarly, general maritime law does not allow a spouse or parent of an injured seaman to recover for the loss of society resulting from the injury. *Horsley v. Mobil Oil Corporation*, 15 F.3d at 202; *Murray v. Bertucci Construction Company*, 958 F.2d at 132 (holding that "spouse of an injured seaman has no cause of action for loss of society under the general maritime law").

4. The second prong is inapplicable because "wrongful death and survival remedies did not originate in or have exclusive application in admiralty." *Calhoun v. Yamaha Motor Corporation*, 40 F.3d 622, 629 n. 9 (3rd Cir.1994), *cert. granted, in part*, ─── U.S. ───, 115 S.Ct. 1998, 131 L.Ed.2d 999 (1995). Accordingly, they do not materially prejudice "the characteristic features" of maritime law as the First Circuit interprets this phrase. *Calhoun v. Yamaha Motor Corporation*, 40 F.3d at 629 n. 9 (citing *Ballard Shipping Company v. Beach Shellfish*, 32 F.3d at 627).

Consequently, allowing loss of consortium claims by Stacey and Dylan Clancy under state law contradicts rather than supplements maritime law. Allowing a state law claim for loss of consortium to a spouse and/or child of an injured seaman is inconsistent with maritime law which precludes such recovery and thereby fosters disuniformity. Furthermore, permitting state law claims for loss of consortium disavows the purpose expressed by Congress in enacting the Jones Act, i.e., that Jones Act seamen take the remedies available under the Federal Employers' Liability Act ("FELA").[5] *Horsley v. Mobil Oil Corporation*, 15 F.3d at 201 (Jones Act incorporates remedial scheme of the FELA).

■ In addition, Supreme Court precedent dictates that state wrongful death and survival statutes do not survive in actions involving the injury or death of a seaman even when the negligence at issue takes place in territorial waters. In *Lindgren v. United States*, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686 (1930) ("*Lindgren*"), the Supreme Court refused to apply a Virginia wrongful death statute to an action involving the death of a seaman while working in the lifeboat of a vessel lying at a port in Norfolk, Virginia. Due to the preclusive effect of the Merchant Marine Act, now commonly referred to as the Jones Act, which "covers the entire field of liability for injuries to seaman," the plaintiff could not resort to the state statute "either to create a right of action not given by the Merchant Marine Act, or to establish a measure of damages not provided by the Act." *Lindgren v. United States*, 281 U.S. at 47, 50 S.Ct. at 211.

In *Gillespie v. United States Steel Corporation*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964) ("*Gillespie*"), the Supreme Court again declined to apply a state wrongful death statute to an action seeking recovery for the death of a seaman in territorial waters. In so doing, the Supreme Court noted that under the Jones Act "Congress provided

an exclusive right of action for the death of seamen killed in the course of their employment, superseding all state death statutes which might otherwise be applied." *Gillespie*, 379 U.S. at 154, 85 S.Ct. at 312.

In *Miles*, the Supreme Court acknowledged the continuing viability of the *Lindgren* and *Gillespie* decisions but recognized their limited effect as extending "only to state remedies." *Miles*, 498 U.S. at 29, 111 S.Ct. at 324 (discussing *Lindgren* and *Gillespie* as interpreted in *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 396 n. 12, 90 S.Ct. 1772, 1785 n. 12, 26 L.Ed.2d 339 (1970), as extending to state court remedies "and not to a general maritime wrongful death action"). State law remedies for loss of consortium with respect to a seaman injured in territorial waters are precisely at issue in this case. *Lindgren* and *Gillespie* therefore preclude plaintiffs' state law claims for loss of consortium.

■ It is true that state law remedies may be available to nonseamen injured or killed in territorial waters. *See, e.g., Calhoun v. Yamaha Motor Corporation*, 40 F.3d 622 (3rd Cir.1994) (federal maritime law does not displace wrongful death and survival state law claims with regard to accident to nonseaman/recreational boater in territorial waters); *but cf. Wahlstrom v. Kawasaki Heavy Industries, Ltd.*, 4 F.3d 1084, 1089 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1060, 127 L.Ed.2d 380 (1994) (state law wrongful death claims properly dismissed inasmuch as federal maritime law applies to parents' wrongful death/products liability action for death of son/recreational jet skier in territorial waters). Nevertheless, because of Dean Clancy's status as a seaman, the Jones Act provides certain remedies which are exclusive and preclusive to those provided under state law.

■ Finally, plaintiffs maintain that the Tenth Amendment and principles of state sovereignty require application of the state law loss of consortium claims. Recent deci-

---

5. The Jones Act states, in pertinent part, that:
    Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such

action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply.
46 U.S.C.App. § 688.

sions of the Supreme Court interpret the Tenth Amendment as a structural rather than a substantive limitation on Congress' ability to enact legislation (such as the Jones Act) which, by operation, implicates an area within the traditional prerogative of the states. "States must find their protection from congressional regulation through the national political process, not through judicially regulated defined spheres of unregulable state activity." *South Carolina v. Baker,* 485 U.S. 505, 512, 108 S.Ct. 1355, 1360, 99 L.Ed.2d 592 (1988); *accord New York v. United States,* 505 U.S. 144, 177, 112 S.Ct. 2408, 2429, 120 L.Ed.2d 120 (1992) (referring to the *National League of Cities* and *EEOC v. Wyoming*[6] decisions and stating that, "The Court has more recently departed from this approach," citing *Baker*). The Supreme Court's newly developed "concept of federalism" emphasizes "the political process, as opposed to the [T]enth amendment," as the vehicle for protecting state sovereignty. *Maldonado v. Administracion de Correccion del Estado Libre Asociado,* 1992 WL 301403 at *3 (D.P.R. Oct. 6, 1992); *see also Association of Community Organizations for Reform Now v. Edgar,* 56 F.3d 791, 796 (7th Cir.1995) (characterizing principle of state sovereignty enunciated in *Usery* as surviving only "in severely attenuated form" and the Tenth Amendment as being "put back in its bottle").

    Moreover, although states continue to retain " 'a significant measure of sovereign authority,' " they do so " 'only to the extent that the Constitution has not divested them of their original powers and transferred those powers to the Federal Government.' " *U.S. Term Limits, Inc. v. Thornton,* —— U.S. ——, ——, 115 S.Ct. 1842, 1854, 131 L.Ed.2d 881 (1995) (quoting *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 549, 105 S.Ct. 1005, 1017, 83 L.Ed.2d 1016 (1985)). Consequently, the Tenth Amendment reserves those powers in existence at the time of the ratification of the Constitution and not transferred to the federal government through the Constitution.

*U.S. Term Limits, Inc. v. Thornton,* —— U.S. at —— – ——, 115 S.Ct. at 1854–1855.

    Plaintiffs suggest that the Tenth Amendment protects the state law loss of consortium claims at least with respect to the area within a state's territorial waters. Plaintiffs' reliance on the three prong test enunciated in *Usery* and reiterated in *EEOC v. Wyoming,* 460 U.S. at 252, 103 S.Ct. at 1068 (quoting *Usery*) is not well founded. The viability of the analysis is questionable, *Association of Community Organizations for Reform Now v. Edgar,* 56 F.3d at 796 (noting that *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), overruled *Usery*), and courts decline to extend the doctrine to federal legislation "not squarely bottomed on the commerce clause." *State of New Hampshire Department of Employment Security v. Marshall,* 616 F.2d 240, 247 (1st Cir.), *cert. denied,* 449 U.S. 806, 101 S.Ct. 53, 66 L.Ed.2d 10 (1980); *accord Commonwealth of Kentucky v. Donovan,* 704 F.2d 288, 298–299 n. 15 (6th Cir.1983) (collecting cases); *In re Nashville White Trucks, Inc.,* 22 B.R. 578, 582 n. 5 (M.D.Tn.1982) (collecting cases for finding that *Usery* "has not yet been extended to limit Congress' powers under any other section of the Constitution"). With respect to the case at bar, Article III, section 2 of the Constitution provides that the federal "judicial Power shall extend.... to all Cases of admiralty and maritime jurisdiction." *See In re Holoholo Litigation,* 557 F.Supp. 1024, 1029 (D.Haw. 1983) (declining to extend *Usery* and Tenth Amendment state sovereignty argument to invalidate application of federal maritime law in light of Article II, section 2).

    State sovereignty and principles of federalism similarly fail to save the state law loss of consortium claims. While states undoubtedly have an interest in protecting the welfare of their citizens and compensating state citizens for tortious injuries, the federal government also has an interest in ensuring the uniform and predictable application of laws to maritime injuries. A maritime injury

---

**6.** Full citations for these cases are *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) (*"Usery"*), and *EEOC v. Wyoming,* 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983).

to a seaman which may result in the loss of consortium to a spouse or minor child is not an area within the exclusive and traditional province of the states. Recognizing the state law loss of consortium claims directly contradicts maritime law which prohibits such recovery. This court therefore declines to adopt plaintiffs' arguments.,

██ As a final matter, defendant requests an award of attorneys fees and other relief under Rule 11(c), Fed.R.Civ.P. ("Rule 11"). (Docket Entry # 25). The amended version of Rule 11 applies to the conduct at issue which took place after the 1993 amendments to the rule. Rule 11(c)(1)(A) allows a litigant a safe harbor in the event the litigant withdraws its position within 21 days after service of the Rule 11 motion. Plaintiffs timely withdrew their opposition to the partial motion to dismiss with respect to all of the counts except those filed under New Hampshire state law.

With respect to whether the state law loss of consortium claims were "warranted by existing law or by a nonfrivolous argument for the extension" of such law "or the establishment of new law," Rule 11(b)(2), Fed. R.Civ.P., the First Circuit has not taken a position with respect to a loss of consortium claim brought under state law by the relative of a Jones Act seaman injured in territorial waters. Although a court in this district declined to apply the state law claim, *Horsley v. Mobil Oil Corporation*, 825 F.Supp. 424, 427 ·(D.Mass.1993), *aff'd*, 15 F.3d 200 (1st Cir.1994), the First Circuit opinion in *Horsley* did not expressly address the issue and language in another First Circuit opinion indicates a certain receptiveness to state law claims under wrongful death statutes for accidents in territorial waters.[7] Likewise, dicta in *Miles* endorses the concept of applying state law survival statutes. *Miles*, 498 U.S. at 33, 111 S.Ct. at 325 ("states have survival statutes applicable to tort actions generally and admiralty courts have applied these state

statutes in many instances to preserve suits for injury at sea") (citations omitted).

In light of the lack of clearly defined First Circuit precedent in this area, plaintiffs' argument to impose liability under state law for the loss of consortium claims is not en-. tirely unfounded. *See American Dredging Company v. Miller*, —— U.S. at ——, 114 S.Ct. at 987; *accord Calhoun v. Yamaha Motor Corporation*, 40 F.3d at 628 (acknowledging "lack of a clearly delineated conflicts inquiry" in the area of federal maritime preemption of state law). Plaintiffs' arguments therefore fall outside the reach of Rule 11. *See generally Maine Audubon Society v. Purslow*, 907 F.2d 265, 267–268 (1st Cir.1990) (discussing Rule 11 standard); *Rodriguez v. Banco Central*, 155 F.R.D. 403, 405 (D.P.R. 1994) (stating that "courts must avoid chilling the legal bar's enthusiasm or creativity"). Sanctions are therefore inappropriate.

### CONCLUSION

In accordance with the foregoing discussion, defendant's partial motion to dismiss (Docket Entry # 24) is **ALLOWED.** Counts XVI, XVII, XVIII, XIX, XX and XXI are dismissed.

---

7. In *Ellenwood*, the First Circuit noted that:
   Even today, plaintiffs may invoke state wrongful death statutes under the saving clause insofar as they involve accidents in territorial waters and do not conflict with the

substantive principles developed under the maritime wrongful death doctrine.
*Ellenwood v. Exxon Shipping Company*, 984 F.2d at 1280 n. 12.